Docket No. 13-16971

# UNITED STATES COURT OF APPEAL

# FOR THE NINTH CIRCUIT

────────────────────────

**ERICA SOLTERO,**
Plaintiff/Appellant,

v.

**MACY'S, INC.**
Defendant/Appellee.

────────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
CASE NO. 2:13-CV-01063-JAM-EFB
HON. JOHN A. MENDEZ

────────────────────────

## APPELLEE'S ANSWERING BRIEF

────────────────────────

**MACY'S, INC.**
Brian M. Parsons (MO SBN 59014 )
Macy's, Law Department
611 Olive Street, 10th Floor
St. Louis, Missouri  63101
Telephone: (314) 342-6851
Facsimile: (314) 342-6066
Brian.M.Parsons@macys.com

**LAFAYETTE & KUMAGAI LLP**
Susan T. Kumagai (SBN 127667)
100 Spear Street, Suite 600
San Francisco, California  94105
Telephone: (415) 357-4600
Facsimile: (415) 357-4605
skumagai@lkclaw.com

Attorneys for Defendant/Appellee
MACY'S, INC.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Macy's, Inc. hereby discloses that it is a publicly traded corporation. Macy's, Inc. further discloses that no publicly held corporation owns 10% or more of its stock, and that it does not have a parent corporation that owns 10% or more of its stock.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.     STATEMENT OF JURISDICTION ............................................. 1

II.    STATEMENT OF THE ISSUES PRESENTED .......................... 1

III.   STATEMENT OF FACTS ....................................................... 1

     A.    Macy's Solutions InSTORE Dispute Resolution Program .................. 1

     B.    At the Time of Her Hire, Soltero Was Provided with Detailed Information About the Solutions InSTORE Program and Advised that She Could Voluntarily Elect Not to Participate in Step 4 Arbitration. ................... 3

          1.    Employment Application. ........................................... 3

          2.    The SIS New Hire Brochure and Plan Document. .................... 4

          3.    The Opt-Out Election Form. ....................................... 5

          4.    Solutions InSTORE Video ......................................... 6

          5.    The Solutions InSTORE Poster .................................... 6

     C.    Soltero Agreed to Participate in Step 4-Arbitration of the SIS Program ................... 6

IV.   SUMMARY OF ARGUMENT .................................................... 7

V.    ARGUMENT ............................................................................. 9

     A.    Standard of Review. .......................................................... 9

     B.    The Parties' Arbitration Agreement is Valid and Enforceable Irrespective of the New Hire Acknowledgement Form Challenged by Soltero. ................... 10

          1.    Two Independent Grounds Exist to Establish an Enforceable Arbitration Agreement Between Macy's and Soltero. ................... 11

i

a. Soltero Assented to Arbitration by Failing to Opt Out. ................................................................13

b. Plaintiff's Continued Employment Also Created a Binding Agreement. ..........................................14

2. The Undisputed Evidence in the Record Mandates the Same Result Even if the New Hire Acknowledgement Form is Excluded. ..................................................15

C. The District Court Did Not Abuse Its Discretion by Admitting the Exhibits to Mr. Veeraraghavan's Declaration. ..............................19

D. Soltero's Request for Discovery is Untimely and Meritless. ..............23

VI. CONCLUSION .................................................... 26

CERTIFICATE OF COMPLIANCE ................................................ 27

STATEMENT OF RELATED CASES ............................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Ashton-Tate Corp. v. Ross*,
　916 F.2d 516 (9th Cir. 1990) ...............................................26

*AT&T Mobility, LLC v. Concepcion*,
　131 S. Ct. 1740 (2011).......................................................11

*Baldwin Hills Medical Group v. Los Angeles County Metropolitan Transp.*
　*Authority,* 196 Fed. Appx. 567 (9th Cir. 2006) ......................................9

*Boston Telecommunications Group v. Deloitte Touche Tohmatsu*,
　249 Fed. Appx. 534, 2007 WL 2827681 (9th Cir. 2007) ......................................9

*Boyd v. City & County of San Francisco.*,
　576 F.3d 938 (9th Cir. 2009) ...............................................17

*Bushley v. Credit Suisse First Boston*,
　360 F.3d 1149 (9th Cir. 2004) ...............................................9

*Circuit City Stores, Inc. v. Ahmed*,
　283 F.3d 1198 (9th Cir. 2002) ...............................................13

*Circuit City Stores, Inc. v. Najd (Najd)*,
　294 F.3d 1104 (9th Cir. 2002) ............................................... 12-13, 13

*Ecological Rights Found. v. Pacific Lumber Co.*,
　230 F.3d 1141 (9th Cir. 2000) ...............................................16

*Engquist v. Or. Dep't of Agric.*,
　478 F.3d 985 (9th Cir. 2007), *aff'd* 553 U.S. 591, 128 S. Ct. 2146,
　170 L. Ed. 2d 975 (2008)...............................................17

*Gray v. Shell Oil Co.*,
　469 F.2d 742 (9th Cir. 1972) ...............................................17

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
　716 F.3d 764 (3d Cir. 2013) ............................................... 23, 24

iii

*Haddad v. Lockheed Cal. Corp.*,
    720 F.2d 1454 (9th Cir. 1983) ..............................................................17

*Kaiser Found. Health Plan, Inc. v. Abbott Laboratories, Inc.*,
    552 F.3d 1033 (9th Cir. 2009) ................................................................9

*Kotteakos v. United States*,
    328 U.S. 750, 90 L. Ed. 1557, 66 S. Ct. 1239 (1946) .........................17

*KPMG, LLP v. Cocchi*,
    132 S. Ct. 23 (2011) ...............................................................................12

*M/V American Queen v. San Diego Marine Constr. Corp.*,
    708 F.2d 1483 (9th Cir. 1983) ..............................................................19

*Mendoza v. Block*,
    27 F.3d 1357 (9th Cir. 1994) .............................................................9, 26

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...................................................................................12

*Perry v. Thomas*,
    482 U.S. 483 (1987) ...............................................................................12

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943) .................................................................................16

*United States v. Morales*,
    108 F.3d 1031 (9th Cir. 1997) ..............................................................17

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996) .................................................................12

**State Cases**

*24 Hour Fitness v. Superior Court*,
    66 Cal. App. 4th 1199 (1998) ...............................................................15

*Asmus v. Pacific Bell*,
    23 Cal.4th 1 (2000) .........................................................................13, 14

*Baker v. Aubry*,
    216 Cal. App. 3d 1259 (1989) ..............................................................15

iv

*Brookwood v. Bank of America*,
    45 Cal. App. 4th 1667 (1996) ...............................................................15

*Cione v. Foresters Equity Services, Inc.*,
    58 Cal. App. 4th 625 (1997) .................................................................15

*Craig v. Brown & Root, Inc.*,
    84 Cal. App. 4th 416 (2000) .................................................................14

*Marshall & Co. v. Weisel*,
    242 Cal. App. 2d 191 (1966) ...............................................................12

*Merced County Sheriff's Employee's Ass'n v. County of Merced*,
    188 Cal. App. 3d 662 (1987) ...............................................................13

## Statutes

9 U.S.C. § 2 ...........................................................................................12

28 U.S.C. § 2111 ..................................................................................17

## Rules

Fed. R. Civ. P. 26(d) .............................................................................25

Fed. R. Civ. P. 26(f) ..............................................................................25

Fed. R. Civ. P. 30(a), (1), (2)(A)(iii), (b) ............................................26

Fed. R. Civ. P. 56(d) (formerly 56(f)) .................................................26

Fed. R. Civ. P. 61 .................................................................................17

Fed. R. Evid. 901(a) ............................................................................20

# I. STATEMENT OF JURISDICTION

Appellee Macy's, Inc. ("Macy's") adopts Appellant Erica Soltero's ("Soltero") Statement of Jurisdiction insofar as it sets forth the basis for the District Court's jurisdiction, this Court's jurisdiction to hear Soltero's appeal, and the timeliness of Soltero's appeal to this Court from the District Court's order granting Macy's motion to compel Soltero's claims to arbitration and dismissing her complaint.

# II. STATEMENT OF THE ISSUES PRESENTED

1. Whether the District Court properly compelled Soltero's claims to arbitration in light of the evidence in the record.

2. Whether the District Court abused its discretion in overruling Soltero's evidentiary objections as to documents offered by Macy's in support of its motion to compel arbitration.

# III. STATEMENT OF FACTS

## A. Macy's Solutions InSTORE Dispute Resolution Program

In 2003, Macy's, Inc. (formerly known as Federated Department Stores, Inc.) developed and implemented a comprehensive internal early dispute resolution program called Solutions InSTORE (hereinafter, "SIS Program"). (SER, Vol. I,

002.)[1]    The SIS Program gives employees an opportunity to raise and resolve workplace disputes early and fairly and consists of four steps.  By accepting employment with Macy's, all employees agree to be covered by Steps 1 through 4 of the SIS Program.  (SER, Vol. I, 003.)

The fourth and final step of the SIS Program is binding arbitration. Employees are encouraged, but not required, to complete Steps 1 through 3 before proceeding to Step 4.  Importantly however, and contrary to Soltero's assertion, Step 4-Arbitration (administered by the American Arbitration Association) is not mandatory.  (SER, Vol. I, 003-004.)  Step 4 covers only those employees who have not communicated their intention to decline arbitration by mailing an "opt-out" election form to the Office of Solutions InSTORE within 30 days of the employee's date of hire.  (SER, Vol. I, 002-004, 029, 032.)

Step 4 Arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.*, "regardless of the state in which the arbitration is held or the substantive law applied in the arbitration."  (SER, Vol. I, 024.)  Under Step 4 Arbitration and subject to certain exceptions, "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment shall be settled exclusively by final and binding arbitration."  (SER, Vol. I, 003, 017.)

---

[1] Cites to Appellant's Excerpts of Record are identified herein as "EOR."  Cites to Appellee's Supplemental Excerpts of Record are identified herein as "SER."

**B.     At the Time of Her Hire, Soltero Was Provided with Detailed Information About the Solutions InSTORE Program and Advised that She Could Voluntarily Elect Not to Participate in Step 4 Arbitration.**

At the time of her hire, Soltero was provided documents containing detailed information about the Solutions InSTORE Program – including but not limited to her initial job application, the Plan Document, the New Hire Brochure, the Election Form, informational postings on the company's website and in the store – so that she could make an informed decision to participate or not participate in Step 4 Arbitration.

**1.     Employment Application.**

For example, in applying for employment at Macy's, Soltero completed and signed an electronic employment application.  Upon her completion of the application, Soltero electronically input her social security number to verify receipt of and confirm the following information regarding Macy's Solutions InSTORE program:

> Solutions InSTORE:  Please note that if you are hired, you will be given thirty (30) days from your date of hire to decide if you want to participate in the final step of the Company's early dispute resolution program, Solutions InSTORE, which is final and binding arbitration.  It is important that you read all materials and ask any questions you have so that you are fully informed about what Solutions InSTORE has to offer.

(EOR 025-026, 028, SER, Vol. II, 074-075, 079.)

3

## 2. The SIS New Hire Brochure and Plan Document.

Additionally, as with all new employees, Macy's provided Soltero with a copy of the Solutions InSTORE New Hire Brochure (the "Brochure") and Plan Document. (SER, Vol. I, 006-007, 013-030.) The Brochure devotes three pages to Step 4-Arbitration and explains the employee's right to opt out of arbitration. (SER, Vol. I, 008-009, 028-030.) The Brochure makes clear that arbitration is binding, covers any dispute related to the employee's employment, and is a waiver by both parties of the right to a civil action and jury trial. (SER, Vol. I, 028-029.) The Brochure also emphasizes that if an employee wishes to opt out of Step 4, she must submit an election form within 30 days of hire:

> **THE SOLUTIONS INSTORE ENROLLMENT PERIOD** will be your opportunity to decide whether you want to receive the benefits of all four steps of this program during your career with the Company. … If you decide you would like to be excluded from participating in and receiving the benefits of Step 4, we will ask you to tell us in writing by completing the form enclosed in this brochure and returning it to the Office of Solutions InSTORE at the address provided **within 30 days of your hire date**. (Emphasis in original.) (SER, Vol. I, 029.)

Finally, the Brochure indicates other places where the employee can obtain a copy of the Plan Document or ask questions, including www.employeeconnection.net, from the local human resources representative, by email, or calling the Office of Solutions InSTORE. *(Ibid.)*

Additionally, Macy's records confirm that on July 14, 2006, Soltero electronically signed a Solutions InSTORE New Hire Online Acknowledgment form, which stated:

> I have received a copy of the Federated Department Stores' Solutions InSTORE brochure and understand that I have 30 days from my date of hire to review the information and postmark my form to the Office of Solutions InSTORE if I elect to decline the benefits of Step 4 of the program, Arbitration.

(EOR 021-023, 028, 034-035.)

### 3. The Opt-Out Election Form.

The Brochure that Soltero received also contained an "Early Dispute Resolution Program Election Form" (hereafter, "Election Form"). (EOR 021, SER, Vol. I, 032.) Like the Brochure, the Election Form states that an employee has 30 days from her date of hire to opt out of Step 4-Arbitration; otherwise she will be covered by all four steps of the SIS Program. *Ibid*. The specific opt-out language is located directly above the space for the employee's signature and states:

> ***I have read and understand the program information, and voluntarily agree that I am waiving the ability to participate in Step 4 of the Solutions InSTORE Program. Please keep a copy of this form.***

(Emphasis in original.) (SER, Vol. I, 031-032.) In addition, the Election Form provides the address of the Office of Solutions InSTORE and states that, in order

5

to opt out, the employee must mail a completed Election Form to the Office of Solutions InSTORE within thirty (30) days of her hire date. *(Ibid.)*

### 4. Solutions InSTORE Video.

On the day of hire or shortly thereafter, all employees view a Solutions InSTORE videotape ("SIS Orientation Video"). The video explains the four steps of the program, including the voluntary nature of the fourth step, and further explains the arbitrator's role and the finality of the arbitrator's decision. (SER, Vol. I, 010, 035-043.) Appellant does not deny that she watched this video, claiming only that she does "not recall" the contents of the video. (EOR 038, SER, Vol. II, 081.)

### 5. The Solutions InSTORE Poster

At the time of Soltero's hire and throughout her employment, a poster describing the 4-step process of Solutions InSTORE was provided to her store for display in an area frequented by employees. (SER, Vol. I, 010, 034.) The poster diagrams each step of the SIS Program, including Step 4-Arbitration in the form of a pyramid. *(Ibid.)*

## C. Soltero Agreed to Participate in Step 4-Arbitration of the SIS Program

Macy's records show that Soltero did not return an "opt-out" election form within 30 days of her July 2006 hire. (SER, Vol. I, 010-011.) Indeed, Soltero concedes that she did not return an election form, instead arguing that the

6

arbitration agreement does not apply to her. (SER, Vol. II, 081.) However, Soltero was advised in a multitude of ways at the outset of her employment – through her initial employment application, the Brochure, the Opt-Out Election Form, the New Hire Acknowledgement form, the New Hire Training Orientation, the SIS Orientation Video, and the SIS poster – that she was covered by Step 4-Arbitration unless she opted out within 30 days of her date of hire. By choosing not to return the "opt-out" election form, despite the opportunity to do so, Soltero manifested her intent to participate in the provisions of the SIS Program requiring that any employment-related dispute be arbitrated.

## IV. SUMMARY OF ARGUMENT

Macy's motion to compel arbitration set forth several different methods by which Soltero was advised about Macy's arbitration agreement and requirement that she affirmatively opt-out within 30 days if she did not wish to arbitrate any employment-related disputes with Macy's. In light of the overwhelming evidence that Soltero was on notice of her obligation to affirmatively opt-out of arbitration and that she failed to do so, the District Court granted Macy's motion and compelled Soltero's claims to arbitration.

On appeal, Soltero seeks to overturn the District Court's reasoned judgment based solely on her evidentiary challenge to just one of the several methods by which she was informed about Macy's arbitration agreement. Specifically, Soltero

7

challenges the District Court's refusal to exclude evidence that Soltero electronically signed the New Hire Acknowledgement form regarding Macy's arbitration agreement not because Soltero says she did not do it, but because the custodian of the electronic records was not physically present when she did so.

However, Soltero's "authentication" argument with respect to her electronic signature is a red herring, because she was put on notice through many other means of her obligation to opt-out of arbitration. Indeed, Soltero does not deny that she received any of the materials provided to her by Macy's regarding arbitration or that she was given 30 days to review them and make her decision to opt-out. In light of the overwhelming and undisputed evidence that Soltero was informed of Macy's arbitration program and that she failed to opt-out, the District Court's denial of Soltero's limited evidentiary objection had no impact on the ultimate decision to compel her claims to arbitration. Soltero was not prejudiced by the overruling of her evidentiary objection by the District Court, and this evidentiary issue is not an appropriate basis to overturn the District Court's judgment.

Moreover, the District Court did not abuse its discretion in overruling Soltero's evidentiary objections. Soltero expressly admits that she completed job training on July 14, 2006, during which she completed a variety of on-line forms by entering her social security number, date of birth, and zip code. Macy's records confirm that Soltero completed the New Hire Acknowledgment Form on July 14,

2006, by inputting her social security number, date of birth, and zip code. Soltero's contention on appeal that Macy's alleged failure to properly authenticate her New Hire Acknowledgement Form through a "cryptographaic hash function" (when Soltero does not even deny completing the form) does not warrant a reversal of the District Court's ruling and should be rejected by this Court.

## V. ARGUMENT

### A. Standard of Review.

A trial court's evidentiary rulings are reviewed for abuse of discretion and are reversed only if there is a finding that the district court abused its discretion and the error was prejudicial. *Kaiser Found. Health Plan, Inc. v. Abbott Laboratories, Inc.,* 552 F.3d 1033, 1042 (9th Cir. 2009). Otherwise, the Court reviews a district court's decision to grant a motion to compel arbitration *de novo*. *Boston Telecommunications Group v. Deloitte Touche Tohmatsu,* 249 Fed. Appx. 534, 2007 WL 2827681 *1 (9th Cir. 2007), citing *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).[2]

---

[2] The basis of Soltero's appeal is solely on grounds relating to her evidentiary objections below. She raises no issue regarding the merits of Macy's Motion to Compel Arbitration including the enforceability of the agreement. Hence, Soltero has waived her right to raise any argument in her Reply Brief and/or at oral argument that was not raised in her Opening Brief. *See Baldwin Hills Medical Group v. Los Angeles County Metropolitan Transp. Authority,* 196 Fed. Appx. 567, 569 (9th Cir. 2006), citing *Mendoza v. Block*, 27 F.3d 1357, 1363 (9th Cir. 1994) (failure to raise an issue in an opening brief results in waiver of the issue on appeal).

**B.    The Parties' Arbitration Agreement is Valid and Enforceable Irrespective of the New Hire Acknowledgement Form Challenged by Soltero.**

In its motion to compel arbitration, Macy's set forth two alternative means by which Soltero and Macy's entered into an enforceable arbitration agreement. Specifically, Soltero manifested her assent to arbitrate any employment-related disputes with Macy's both by (1) failing to opt-out of arbitration within 30 days and (2) continuing her employment with Macy's.

As articulated in more detail below, the common thread between these two alternative means of establishing an enforceable arbitration agreement is that Soltero was put on notice of the arbitration program and her duty to affirmatively opt-out.  The fact that Soltero was put on notice is clearly established.  As it does with all employees, Macy's communicated the details of the arbitration program to Soltero in a variety of ways, including a number of hand-outs, a video presentation, a poster, and by electronic means.  She was then given a full 30 days to review the information, ask questions, and consider her decision.  Soltero does not deny that she did not opt out within that 30 day period.  In light of these established, standardized communications to all Macy's employees and the fact that Soltero does not deny receiving them, there is no dispute that an enforceable arbitration agreement exists.

The fundamental flaw in Soltero's attack on the District Court's reasoned judgment is that she treats the New Hire Acknowledgement Form that she electronically signed as if it were the actual arbitration agreement. Under Soltero's theory, the alleged failure to properly authenticate the New Hire Acknowledgement Form extinguishes any agreement to arbitrate. This is simply not the case. In fact, the New Hire Acknowledgement Form is but one of several means by which Soltero was put on notice of Macy's arbitration program and her duty to opt-out. As recognized by the District Court, the inclusion or exclusion of this single piece of evidence is immaterial to the ultimate conclusion that Soltero agreed to arbitrate her disputes with Macy's. As set forth more fully below, any alleged defect in the inclusion of the New Hire Acknowledgement Form does not prejudice Soltero as independent grounds exist to affirm the District Court's judgment.

> **1.    Two Independent Grounds Exist to Establish an Enforceable Arbitration Agreement Between Macy's and Soltero.**

Congress enacted the FAA in 1925 "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). To this end, arbitration agreements are placed on the same footing as other contracts and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. The FAA "reflects an emphatic federal policy in favor" of arbitration. *KPMG, LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (citation omitted). As the United States Supreme Court has repeatedly emphasized, arbitration agreements are to be read liberally to effectuate their purpose, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), and are to be "rigorously enforced." *Perry v. Thomas*, 482 U.S. 483, 490 (1987).

To determine the validity of an arbitration agreement, a court interprets a "contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.,* 83 F.3d 1046, 1049 (9th Cir. 1996). Under California law, a valid and enforceable contract must satisfy the following elements: (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) sufficient consideration. *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966). Each element is satisfied here and, in fact, Soltero does not even challenge three of the four. The only element at issue, Soltero's consent to arbitrate, is demonstrated in this case in two independent, legally sufficient ways: (1) her failure to opt out of Step 4; and (2) her decision to continue her employment after being put on notice of the SIS Program, including Step 4-Arbitration. *See e.g., Circuit City Stores, Inc.*

*v. Najd (Najd),* 294 F.3d 1104, 1109 (9th Cir. 2002) (applying California law); *Asmus v. Pacific Bell*, 23 Cal.4th 1, 15 (2000).

        **a.      Soltero Assented to Arbitration by Failing to Opt Out.**

Opt-out provisions are valid and enforceable under California law. *Najd*, 294 F.3d at 1109 (holding that an employee "assented to the [arbitration agreement] by failing to exercise his right to opt out of the program" within 30 days). In fact, this Court has already upheld similar 30-day opt-out procedures in connection with employment arbitration agreements and found that they afford employees ample opportunity to decide whether to participate in arbitration. *Ibid.*; *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (holding that an employee, by failing to opt out of arbitration within 30 days, signified his consent to arbitration and was "given ample opportunity to investigate any provisions he did not understand before deciding whether to opt out of" the program). When an employee has notice of an arbitration agreement and a meaningful opportunity to opt out and then fails to do so, she has assented. *Id.* This failure to opt out is evidence of mutual consent and results in a contract to arbitrate. *Id.*; *see also Merced County Sheriff's Employee's Ass'n v. County of Merced*, 188 Cal. App. 3d 662, 670 (1987) (holding manifestation of mutual consent may be "'wholly or partly by written or spoken words...or by failure to act.'").

13

As outlined above, Soltero received notice of Macy's arbitration agreement through her initial job application, Brochure, Election Form, Plan Document, video presentation, and poster. She had a full 30 days to review the arbitration materials before she was required to make a decision. She had an obligation to opt out if she did not want to be bound by arbitration. By failing to return the "opt-out" Election Form despite the opportunity to do so, she manifested her assent to participate in Step 4-Arbitration.

### b. Plaintiff's Continued Employment Also Created a Binding Agreement.

Under California law, continued employment constitutes consideration for an agreement to arbitrate. *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 421-422 (2000). Thus, Soltero is bound by the arbitration agreement for a second independent reason—she accepted employment, and then remained employed after receiving notice of the arbitration component of the SIS Program both at the time she applied for a job and after she was hired. *Id.* at 420 (acceptance of an agreement to arbitrate may be implied in fact where continued employment constitutes acceptance); *Asmus*, 23 Cal.4th at 15 ("Continuing to work after the policy termination and subsequent modification constituted acceptance of the new employment terms.").

There is no room for debate that Soltero received sufficient notice of the arbitration component of the SIS Program beginning with her employment

14

application. Then, at the time she was hired, Soltero was presented with information about the SIS Program, the arbitration agreement, and the ability to opt-out in multiple ways, including the New Hire Acknowledgement Form, a video, the Brochure, Plan Document and Election Form. By accepting, and then continuing, her employment with Macy's, and by failing to opt out, Soltero agreed to be bound by the arbitration agreement. *See 24 Hour Fitness v. Superior Court*, 66 Cal. App. 4th 1199, 1205 n.1 (1998) (holding continuation of employment after receipt of handbook constituted agreement to arbitrate); *Cione v. Foresters Equity Services, Inc.*, 58 Cal. App. 4th 625, 635 (1997) (accepting employment after being notified of arbitration in application form constituted agreement to arbitrate); *Brookwood v. Bank of America*, 45 Cal. App. 4th 1667, 1673-74 (1996) (same); *Baker v. Aubry*, 216 Cal. App. 3d 1259, 1264-65 (1989) (same).

### 2. The Undisputed Evidence in the Record Mandates the Same Result Even if the New Hire Acknowledgement Form is Excluded.

Soltero's appeal is limited to the evidentiary objection she raised surrounding the electronic signature on the New Hire Acknowledgement Form. However, even if this Court were to find that the District Court abused its discretion in overruling Soltero's objection, it would not alter the ultimate conclusion that Soltero agreed to arbitrate her employment disputes with Macy's. A fundamental tenet of appellate jurisprudence is that a judgment should not be

overturned when alternative bases for the decision exist. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000) ("First, the rule that a case may be affirmed on any ground supported by the record is one driven by efficiency considerations. Where precisely the same result could have been reached on other grounds apparent from the record, sending the case back to the district court is wasteful both for the courts and for the litigants."); *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate."). The District Court's determination that Soltero assented to arbitration is not predicated on her electronic signature on the New Hire Acknowledgment Form. In fact, even if the form were not considered, the remaining evidence demonstrates that Soltero received notice of the arbitration agreement and her obligation to opt out in her job application, Brochure, Plan Document, Election Form, SIS video, and poster – none of which Soltero disputes receiving. Her failure to opt out and her continued employment with Macy's after receiving these other forms of notice constitute her agreement to arbitrate, and this Court need not even reach and decide the evidentiary issue raised by Soltero.

Alternatively, the "harmless error" rule compels the same conclusion. The "harmless error" rule requires courts to "give judgment after an examination of the

16

record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111[3]. Pursuant to § 2111, this Court has previously recognized that a district court's erroneous evidentiary ruling does not warrant reversal unless the error "more probably than not tainted the verdict." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1009 (9th Cir. 2007), *aff'd* 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008); *see also Haddad v. Lockheed Cal. Corp.*, 720 F.2d 1454, 1459 (9th Cir. 1983) ("Just as the verdict in a civil case need only be more probably than not true, so an error in a civil trial need only be more probably than not harmless."). In determining whether an error is harmless, the Court considers, *inter alia*, whether the evidence at issue was cumulative and the overall strength of the case against the appealing party. *Haddad*, 720 F.2d at 1460; *Boyd v. City & County of San Francisco.*, 576 F.3d 938, 949 (9th Cir. 2009); *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc).

The New Hire Acknowledgment Form is the very definition of "cumulative" evidence, given the other established methods by which Macy's placed Soltero on notice of the arbitration program. In fact, the District Court addressed the issue of

---

[3] The harmless error rule is also set forth in Federal Rule of Civil Procedure 61, and this Court has previously recognized its applicability. *Gray v. Shell Oil Co.*, 469 F.2d 742, 751-752 (9th Cir. 1972) ("In any event, the references cannot be said to be grounds for reversal under Rule 61, F.R.Civ.P. This rule is applicable at the appellate level. *Kotteakos v. United States*, 328 U.S. 750, 90 L. Ed. 1557, 66 S. Ct. 1239 (1946).").

the opt-out form and other materials that Soltero did not deny receiving during the

hearing on Macy's motion to compel:

> THE COURT: It's a customs-and-practices case. It is the custom and practice of Macy's. They do this with every employee.
>
> There may not be direct evidence that someone can say "I handed it to plaintiff," but the circumstantial evidence is certainly overwhelming that she was treated exactly the same way as any other employee and she got this [opt-out form] and she didn't exercise it.
>
> Then it sort of shifts to you to overcome that circumstantial evidence. And that's where I come back to I don't see any declaration from your client saying: This is all lies. I never got any of this.
>
> All she's saying is: I don't remember. I was rushed. That's not saying that I didn't get it and, you know, they treated me differently.
>
> You're not arguing that?
>
> MR. PATTEN: No. Your Honor, her declaration was with respect to the online stuff. We're not talking – this opt-out form was a hard copy form.
>
> THE COURT: She's not saying I didn't get it, is she?
>
> MR. PATTEN: I don't believe –
>
> THE COURT: That's not your argument here. I didn't see that.
>
> MR. PATTEN: It's certainly not in her declaration, Your Honor.
>
> THE COURT: Okay. So you can't argue that now.
>
> MR. PATTEN: Absolutely, Your Honor…

(SER, Vol. II, 082-085.)           ***

18

As the above-cited passage conclusively shows, Soltero has not denied receiving the documentation informing her of the need to affirmatively opt-out of Step 4 arbitration, including the actual opt-out Election Form. Whether or not her electronic signature on the New Hire Acknowledgement Form was properly authenticated is therefore irrelevant, as it is merely cumulative of other "overwhelming" evidence that Soltero was on notice of the arbitration agreement and her obligation to opt out. Any error with regard to the electronic signature on the New Hire Acknowledgement Form is therefore harmless because, as demonstrated above, even a reversal of the District Court's evidentiary ruling would not warrant a reversal of its judgment granting Macy's motion to compel arbitration and dismissing Soltero's lawsuit. *See also M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (upholding decision to admit documents that may have suffered from technical authentication deficiencies as any error was harmless).

### C. The District Court Did Not Abuse Its Discretion by Admitting the Exhibits to Mr. Veeraraghavan's Declaration.

Consideration of Soltero's evidentiary objection is not necessary to affirm the District Court's judgment. However, even if the Court chooses to address the narrow issue raised in Soltero's appeal, she fares no better in the end because Mr. Veeraraghavan's declaration laid an adequate foundation for the admission of Soltero's electronic signature on the online New Hire Acknowledgement Form.

Soltero's appeal is limited to her unsubstantiated belief that the Declaration of Mr. Veeraraghavan was insufficient to authenticate her electronic signature and the online forms she electronically signed. This contention has no merit. Fed. R. Evid. 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." This is exactly what Mr. Veeraraghavan's declaration does. In paragraphs 1-3, Mr. Veeraraghavan sets forth his job duties and experience relevant to the on-line forms attached as exhibits to his declaration. (EOR 025-026.) Next, in paragraphs 5-11, Mr. Veeraraghavan walks through a set of exemplar screens to show what a typical employee who was accessing the screens on-line would see. (EOR 026-027.) For example, Exhibit A shows an exemplar of the sign-in screen in which the employee must input their social security number, month and day of birth, and zip code. (SER, Vol. I, 044-045.) Subsequent exhibits (Exhibits B, C, D and E) (SER, Vol. I, 046-047, EOR 030-032, SER, Vol. I, 048-049, 050-051) walk through exemplar screens of what the employee would see onscreen as he or she went through the acknowledgement process for the New Hire Acknowledgement Form. Next, in paragraph 13, Mr. Veeraraghavan identifies the New Hire Acknowledgement Form that Soltero saw when she completed her on-line paperwork, and attaches it as Exhibit F along with a copy of the electronic

20

signature confirmation linked to that New Hire Acknowledgement Form.  (EOR 028, 033-035.)  Finally, in paragraph 14, Mr. Veeraraghavan attaches copies of the other on-line forms completed by Soltero on July 14, 2006.  (EOR 028, SER, Vol. II, 054-073.)

Despite this straightforward process, Soltero argues that Mr. Veeraraghavan has failed to properly authenticate the attached exhibits.  First, Soltero argues that there is a "gaping technical hole" because Mr. Veeraraghavan's Declaration does not include a "cryptographic hash function within the digital signature." (Appellant's Brief, p. 9.)  However, Soltero completely ignores paragraph 10 and Exhibit G (EOR 027, SER, Vol. I, 052-053), in which Mr. Veeraraghavan describes the process by which Soltero's electronic signature is recorded in XML format.  By comparing Exhibits F and G, it is relatively easy to match up the social security number (ending in 1969), zip code (95355), and date the form was completed (7/14/2006 06:52:07 PM).   Coupled with Mr. Veeraraghavan's background and job duties for overseeing the management of online forms completed by new employees, this information is more than sufficient evidence to properly authenticate that the electronic signature and acknowledgment form are what Mr. Veeraraghavan says they are – the acknowledgement form that Soltero electronically signed on July 14, 2006 at 6:52:07 PM.  This is particularly true

21

when, as the District Court noted, Soltero does not even deny electronically signing the form.

Soltero also seems to suggest that Mr. Veeraraghavan cannot have personal knowledge of the online signature process because he was not physically in the room with Soltero when she entered her electronic signature. (Appellant's Brief, p. 8.) Again, Mr. Veeraraghavan's Declaration more than adequately establishes the basis for his personal knowledge by virtue of his position and job duties, and articulates his ability to read and authenticate the XML code representing Soltero's electronic signature.

Soltero argues that the New Hire Acknowledgement Form Itself (EOR 033-035) bears "significant indicia of unreliability" due to the fact that Exhibit C (an exemplar of the New Hire Acknowledgement) contains different prefatory language than the New Hire Acknowledgement actually signed by Soltero. (Appellant's Brief, p. 10.) Soltero's argument ignores the fact that Exhibit C (along with Exhibits A, B, D and E) are specifically identified as "exemplars." As exemplars, they are not being offered as the actual screens that Soltero would have seen. Instead, as the word exemplar suggests, they are being offered as a typical example or a model of what Soltero would have seen on the computer screen as she completed the electronic forms. At no point did Mr. Veeraraghavan claim that the exemplar exhibits were the actual screens viewed by Soltero. Indeed, all of the

22

exemplars reflect at the top of the page that they were printed on October 23, 2009, more than three years after Soltero electronically acknowledged her forms. (EOR 031-032, SER 044-051.) Mr. Veeraraghavan's Declaration is sufficient to authenticate these exhibits for what they are – a typical example of what an employee like Soltero would see on the computer screen. As such, Soltero cannot show any abuse of discretion by the District Court as these exhibits were all properly admitted as exemplars.

### D. Soltero's Request for Discovery is Untimely and Meritless.

Soltero argues for the first time on appeal that she should be entitled to engage in fact discovery before a ruling is issued on Macy's motion to compel arbitration. This argument is untimely and lacks merit because she fails to establish that she is entitled to such discovery and failed to even engage in the discovery below.

First, Soltero relies on the Third Circuit opinion in *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013), for the proposition that when arbitrability is not apparent on the face of the complaint, "the motion to compel arbitration must be denied pending limited fact discovery into whether the parties agreed to arbitrate and whether the agreement was valid." (Appellant's Brief, p. 13.) To state that she is unreservedly entitled to discovery completely

misconstrues the Third Circuit's opinion in *Guidotti*, which referenced an earlier decision and expressly cautioned that:

> For example, a party may, in an effort to avoid arbitration, contend that it did not intend to enter into the agreement which contained an arbitration clause. Such a naked assertion ... by a party to a contract that it did not intend to be bound by the terms of an arbitration clause, we reasoned, would be insufficient to place in issue the making of the arbitration agreement for purposes of the FAA.

716 F.3d at 778 (internal citations omitted).

As recognized in *Guidotti*, a "naked assertion" of a dispute regarding contract formation is insufficient to trigger a party's right to engage in discovery before a court rules on a motion to compel arbitration. *Id.* at 778-779. Here, Soltero submitted a declaration in opposition to Macy's motion to compel arbitration that does not deny that she received the written materials concerning Macy's arbitration program. (EOR 038, SER, Vol. II, 081.) Nor does Soltero's declaration even deny that she electronically signed the New Hire Acknowledgement Form. To the contrary, Soltero admits that on July 14, 2006, she completed a series of online forms (including Form W-4 and I-9) by entering her social security number, date of birth, and zip code, but that she felt "pressured" to complete the forms without reading them. Of course, all of the materials provided to Soltero clearly stated that she had 30 days to read and consider the arbitration agreement before she was required to make a decision. Contrary to her

implication, electronically signing the New Hire Acknowledgement Form was not the act by which she assented to arbitrate. Soltero also admits that she watched videos during her training but "does not recall that it concerned [Macy's] 'Solutions InSTORE Program.'" Soltero Declaration, ¶¶ 5, 11. (EOR 038, SER, Vol. II, 081.) If anything, Soltero's declaration actually corroborates Macy's claim that she electronically signed the New Hire Acknowledgment Form by inputting her social security number, date of birth, and zip code during her training on July 14, 2006. Her failure to deny receipt of any of the documentation and information regarding Macy's arbitration program compels a conclusion that there are no disputed material facts requiring additional discovery.

Moreover, even if, *arguendo*, Soltero had shown sufficient disputed facts exist, which she did not, her demand presented for the first time on appeal to be allowed to engage in discovery rings hollow in light of her failure to seek discovery while the case was pending before the District Court. Federal Rule of Civil Procedure 26(d) permits discovery after the parties have conferred as required by Rule 26(f). Macy's filed its motion to compel arbitration on July 2, 2013, and a hearing was scheduled for September 18, 2013. (EOR 004, 005.) The parties met and conferred pursuant to Rule 26(f) on July 25, 2013. (SER, Vol. II, 086.) Soltero could have propounded written discovery requests or attempted to schedule the deposition of Mr. Veeraraghavan in advance of filing her opposition

25

to Macy's motion on August 28, 2013, and the ultimate hearing before the District Court on September 18, 2013. (EOR 006; Fed. R. Civ. P. 30(a), (1), (2)(A)(iii), (b).) Soltero's failure to even attempt to engage in discovery when she had ample opportunity to do so and failure to raise the issue in her opposition to Macy's motion to compel are fatal to her belated demand for the same discovery on appeal, and the Court should reject it. (SER, Vol. II, 087-088, EOR 006.) *Mendoza*, 27 F.3d at 1363; *see also* Fed. R. Civ. P. 56(d) (formerly 56(f)); *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 519-20 (9th Cir. 1990) (affidavits to conduct discovery under rule 56(f) "must be filed prior to the day of the hearing").

## VI.   CONCLUSION

For all of the foregoing reasons, the District Court's Order should be affirmed. Accordingly, Macy's respectfully requests this Court to affirm the District Court's Order in all respects, to award Macy's its costs on appeal, and to issue such other and further relief as this Court deems appropriate.

Dated: May 2, 2014                    MACY'S, INC.


                                       */s/ Brian M. Parsons*
                                      BRIAN M. PARSONS
                                      Attorneys for Defendant/Appellee
                                      MACY'S, INC.

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses a proportional typeface and 14-point font, and contains 6,084 words.

Dated: May 2, 2014                          MACY'S, INC.


                                             */s/ Brian M. Parsons*
                                             BRIAN M. PARSONS
                                             Attorneys for Defendant/Appellee
                                             MACY'S, INC.

## <u>STATEMENT OF RELATED CASES</u>

Macy's is not aware of any cases pending in this Court that would be deemed related pursuant to Ninth Circuit Rule 28-2.6.

Dated: May 2, 2014                          MACY'S, INC.


                                             */s/ Brian M. Parsons*
                                             BRIAN M. PARSONS
                                             Attorneys for Defendant/Appellee
                                             MACY'S, INC.

| 9th Circuit Case Number(s) | 13-16971 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) May 2, 2014 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) /s/ Susan T. Kumagai

*************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)